FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

05 MAR 18 PH 4: 23

CLERK-ALBUQUERQUE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Elisa C., Cheryll M., and Catherine P, persons with
developmental disabilities, by LA FAMILIA, INC.,
their guardian,

      Plaintiffs,

vs.                                        No. CIV 05-209 LH/WDS

NEW MEXICO DEPARTMENT OF HEALTH,
et al.,

      Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND TO STATE COURT AND REQUEST FOR ATTORNEYS' FEES

This case must be remanded to state court because the removal is untimely. The permissible time for the defendants to remove this case expired in 2003. In fact, the defendants initially attempted to remove this case in 2003. Their first removal petition, however, was defective, and rather than respond to the remand motion, the defendants agreed to a "Stipulated Order of Remand," which was filed on December 29, 2003. *See* Stipulated Order (Ex. A). The Plaintiffs' subsequent amendment of their complaint did not revive the defendants' right to remove or make the case newly removable.

## BACKGROUND

*Nature of Claims*

This is an action for damages and injunctive and declaratory relief brought on behalf of three adult women with developmental disabilities -- Cheryll M., Catherine P. and Elisa C. All three



women were placed into state custody as children by their families and housed at the Los Lunas Hospital and Training School, an Intermediate Care Facility for the Mentally Retarded operated by DOH until it was closed in 1999.

In the 1970's, the Plaintiffs were illegally placed in the Bosque Farms home of defendants Juan and Gloria Garcia -- a family that lacked the training, skill and supports necessary to properly care for the Plaintiffs.   At the time of the placement, Gloria Garcia was a state employee at the Training School.

After that placement, the defendants completely abdicated all responsibility for the Plaintiffs and allowed the Plaintiffs to remain in the Garcia home where they were neglected, abused and ultimately left to languish without services or support for over twenty-two years.   Two of the women were raped and became pregnant after being placed in the home.   Yet, even after the State learned of the two pregnancies in the mid-1980's, the State Defendants allowed all three women to remain in that home for another nineteen years.   In 2003, the women were removed from the Garcia home.

All three Plaintiffs suffered severe physical, medical, social, emotional and psychological abuse and neglect while in the home and none received the services, support and care to which they were entitled.   Plaintiffs seek compensatory damages, punitive damages, declaratory relief, injunctive relief, attorneys fees, expenses, costs and pre- and post-judgment interest.

### Procedural Background

This matter was filed on September 18, 2003, in the First Judicial District Court, County of Santa Fe, State of New Mexico and was assigned to Judge James A. Hall, district judge.   The complaint named ten "John Doe" defendants. Soon after it was filed the defendants removed the action to federal court for the first time.   That removal was defective, and rather than respond to the

remand motion the defendants agreed to a "Stipulated Order of Remand" which was filed on December 29, 2003. *See* Stipulated Order (Ex. A). It is undisputed that the case as stated in the initial pleading in 2003 was removable based on federal question jurisdiction, and could have been removed, but for the first removal petition's procedural defects. The defendants represented as much to the Court in their original petition: "Plaintiff's complaint contains federal claims pursuant 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution." *See* Notice of Removal in CIV 03-1219 RB/ACT [Docket no. 1]. Once back in state court, the parties engaged in extensive discovery. Numerous depositions were taken and thousands of pages of documents have been exchanged. The identities of eight of the John Doe defendants were ascertained through the discovery.

### The Latest Removal

On February 16, 2005, the Plaintiffs filed their First Amended Complaint ("FAC") in state court. Although the FAC names eight (8) of the John Doe defendants (Beth Schaefer, Jim Cowan, Dan Sandoval, Roger Adams, Joseph Mateju, Manuel Perea, Jennifer Burroughs, Christine Montano),[1] the material factual allegations have not been significantly altered and no new causes of action were added. The FAC did not transform the case into a new suit. Rather, the Plaintiffs have refined their factual allegations based on information obtained in state court discovery.

### a.     The basic factual allegations have not changed.

The material factual allegations in the FAC have not significantly changed from the original complaint. As a result of the discovery that has taken place over the last year, the Plaintiffs have been able to more specifically identify the actions of the defendants and to identify additional the

people who participated in those actions that form the basis of the suit. The more specific factual allegations are simply refinements of the same set of operative facts in the original complaint filed in September 2003. The new factual allegations include:

- Plaintiffs now allege that their placement in the Garcia home was part of a broader scheme to "discharge" former Training School residents from "aftercare" status so that the state could terminate its responsibility to care for Training School residents. *See* FAC ¶14 at 9-10. Plaintiffs have identified individuals who they believe were involved in the decision to remove the Plaintiffs from "aftercare" -- Beth Schaefer, Jim Cowan, Roger Adams, Dan Sandoval and Joseph Mateju. *See* FAC ¶¶ 14-18 at 9-14 [Exhibit F to Notice of Removal]. Those specific allegations simply flesh-out and amplify the existing allegations in the original complaint relating to the improper decision to illegally place the Plaintiffs in the Garcia home and failure to follow up and monitor that placement. *See* Original Complaint ¶12 at 5-6; ¶13 at 6; ¶¶'s 22-28 at 9-10; ¶¶'s 30-34 at 12-13; ¶37 at 14; ¶39 at 15; ¶44 at 16; ¶¶'s 45-46 at 17-18; ¶¶'s 56-58 at 20-21; ¶¶'s 59-60 at 22; ¶¶'s 62-66 at 23-24 [Exhibit A to Notice of Removal].

- Plaintiffs now allege that the defendants' violation of their due process rights included the denial of "periodic reviews of the necessity of the Plaintiffs continued involuntary loss of their liberty both in the Training School and the Garcia home and to ensure that they were receiving the medical and other treatments that justified their confinement." *See* FAC ¶31 at 19. Such allegations simply specify one of the ways that the Plaintiffs were deprived of their procedural due process rights as set forth in the original complaint. *See* Original Complaint ¶81 at 27; ¶¶'s 85-87 at 28-30; ¶ 93 at 31-32; ¶¶'s 97-98 at 33-35.

- Plaintiffs previously alleged that Gloria Garcia was a custodial employee of the Training School and that because of her employment status, the Plaintiffs were placed in her home, despite the fact that the Garcias were completely unqualified to care for the Plaintiffs. Those allegations are in the Original Complaint. *See id.* ¶ 27 at 10-11. A new allegation has been added that the placement of Training School residents in the homes of employees "was part of an established practice and policy of the Training School." *See* FAC ¶ 36 at 21. Those new allegations do not alter the essential character of claim that the only reason the women were placed with the Garcias was because Mrs. Garcia was a Training School employee.

- Plaintiffs now allege they were not the only Training School residents placed in the Garcia home. The FAC alleges that at least two other residents were placed and removed, or "traded out," based on alleged physical and sexual abuse. *See* FAC ¶ 38 at

---

[1] Plaintiffs also substituted Sam Howarth, director of DOH's Long Term Services Division, and Dorian Dotson, Director of CYFD's Protective Services Division, for their predecessors, who were sued in their official capacities only for purposes of declaratory and injunctive relief.

22.    Such allegations simply highlight the already existing allegations about the inappropriateness of the Garcia home and the defendants' indifference to the rights and safety of the Plaintiffs. *See* Original Complaint ¶¶'s 25- 33 at 10-13.

- Plaintiffs now allege that they were "entitled to placement in the least restrictive setting that would still provide them with the services and treatment to which they were entitled." *See* FAC ¶43 at 24. That allegation merely restates the existing substantive due process allegations in the Original Complaint that the defendants violated the Plaintiffs' rights to "minimally adequate treatment and freedom from undue restraint," *see* Original Complaint ¶77 at 26, by "unreasonably restraining their liberty by placing them in a home where they did not receive basic care and treatment to which they were entitled and from which they were unable to leave." *See id.* ¶85 at 28-29; ¶93 at 31-32.

In short, although the FAC contains more specific factual allegations than in the original complaint, the material facts underlying the Plaintiffs' claims have changed very little and raise no new causes of action.

**b.    The basic claims and legal theories have not changed.**

Plaintiffs have actually reduced the number of claims in the FAC. In the original complaint, the Plaintiffs asserted ten (10) causes of action. In the FAC, they now assert eight (8) causes of action. Plaintiffs have combined the first three causes of action in the original complaint into one cause of action in the FAC. The three separate causes of action for civil rights violations in the original complaint were as follows:

First Cause of Action -- civil rights violations against defendants Rick Roll, the Garcias and Max Lucero pursuant to 42 U.S.C. § 1983 for deprivation of liberty and property interests guaranteed by the Fourteenth Amendment of the United States Constitution and N.M. Const. Art. II, §18 and liberty and property rights guaranteed by state statutes [the Mental Health Developmental Disabilities Code, N.M.S.A. §§ 43-1-2 et seq. (the "MHDDC"), the Community Mental Health Services Act, formerly codified at N.M.S.A. §§ 23-7-1 to 23-7-12, and the behavioral health services provisions currently codified at N.M.S.A. §§ 9-7-6.1 to 9-7-6.3 (collectively referred to as the "CMHSA")]. *See* Original Complaint ¶¶'s 77-90 at 26-31.

Second Cause of Action -- deprivation of substantive due process rights to minimally adequate treatment against the State Defendants [the State Agency Defendants and defendants Roll and Lucero] as guaranteed by the Fourteenth Amendment of the United States Constitution and N.M. Const. Art. II, §18. *See id.* ¶¶s 92-95 at 31-33.

5

Third Cause of Action -- deprivation of liberty and property rights guaranteed by The Fourteenth Amendment of the United States Constitution, N.M. Const. Art. II, §18, and state statutes without due process of law, including denial of access to the judicial system and failure to obtain and appoint guardians or other persons to protect the Plaintiffs' interests. *See id.* ¶¶'s 97-104 at 33-36.

In the FAC, the Plaintiffs have combined those three claims into a single cause of action for civil rights violations against the individual defendants under the Fourteenth Amendment of the United States Constitution, N.M. Const. Art. II, §18, and 42 U.S.C. § 1983. *See* FAC at 43-51. The essential nature of those allegations, however, has not changed. Moreover, for all intents and purposes, the other seven (7) causes of action have remained the same.

c.     **The naming of the eight (8) new defendants does not change the factual basis for the Plaintiffs' claims.**

The identification of eight (8) of the "John Doe" defendants in the FAC has not transformed this case into a new lawsuit. The original complaint alleged the existence of "Does 1-10" who were alleged to have "participated in the wrongdoing alleged in this Complaint and are sued in their individual capacities." *See* Original Complaint ¶16 at 7-8. Through discovery, the Plaintiffs have been able to identify who actually participated in the illegal decision to place the Plaintiffs in the Garcia home and who allegedly investigated the pregnancies but took no action to remove the Plaintiffs from the Garcia home. The identification of those individuals changes in no way the essential allegations and claims in this case:

* <u>Beth Schaefer</u>. Ms. Schaefer, an attorney, was added as a defendant because she is alleged to have: (i) been aware of the Plaintiffs' placement in the Garcia home; (ii) recommended the discharge of the Plaintiffs to "aftercare"; (iii) learned of the pregnancies of both Catherine and Cheryll and took no action to remove them from the Garcia home; (iv) recommended that Juan Garcia be named as treatment guardian; (v) failed to ensure Plaintiffs' constitutional rights were protected; and failed to have guardians appointed or to ensure the Plaintiffs a right to periodic review. *See* FAC ¶ 14 at 9-10. Those allegations echo allegations in the original complaint concerning the

6

illegal placement of the Plaintiffs, the failure to follow up and monitor the placement and the flawed investigation into the 1983-84 pregnancies.

- <u>Jim Cowan</u>. Mr. Cowan, a social worker at the Training School, was added because: (i) he is alleged to have been involved in the decisions to place Elisa and Catherine in the Garcia home; (ii) he was on the Screening Committee on Admissions and Releases ("SCAR") which voted to discharge the Plaintiffs into aftercare; (iii) he failed to follow up and monitor the placement of the Plaintiffs in the Garcia home; (iv) he is alleged to have failed to ensure the health, safety and constitutional rights of the Plaintiffs. *See* FAC ¶15 at 10-11. Those allegations simply specify allegations in the original complaint concerning the illegal placement of the Plaintiffs and the failure to follow up and monitor the placement.

- <u>Dan Sandoval</u>. Mr. Sandoval, a social worker at the Training School was added as a defendant because: (i) he is alleged to have been on SCAR which voted to discharge the Plaintiffs into aftercare; (ii) he is alleged to have failed to monitor or supervise the placement of the Plaintiffs into the Garcia home; (iii) he is alleged to have failed to ensure the health, safety and constitutional rights of the Plaintiffs. *See* FAC ¶16 at 11-12.

- <u>Roger Adams</u>. Mr. Adams, a former Deputy Administrator at the Training School, was added as a defendant because: (i) he is alleged to have created the program of placing Training School residents into employees' homes; (ii) he attended SCAR meetings and discussed and approved the discharge of the Plaintiffs "from aftercare" (iii) he is alleged to have failed to monitor or supervise the appropriateness of the placement; (iv) he is alleged to have failed to ensure the health, safety and constitutional rights of the Plaintiffs. *See* FAC ¶17 at 12-13.

- <u>Joseph Mateju</u>. Mr. Mateju, a former Administrator at the Training School, was added as a defendant because: (i) he is alleged to have made the final decisions regarding placement of Training School residents; (ii) he is alleged to have failed to monitor or supervise the appropriateness of the placement; (iii) he is alleged to have approved the transfer of the Plaintiffs' Supplemental Security Income payments to the Garcias; (iv) he is alleged to have failed to ensure the health, safety and constitutional rights of the Plaintiffs. *See* FAC ¶ 18 at 13-14.

- <u>Manuel Perea</u>. Mr. Perea, a former supervisor with the Adult Protective Services Division of HSD, was added as a defendant because: (i) he is alleged to have known of the 1983-84 pregnancies of Catherine and Cheryll, but took no action to remove them from the Garcia home; (ii) he is alleged to have been aware of the inappropriateness of the Garcia home as a placement for the Plaintiffs as early as 1982; (iii) he is alleged to have placed Cheryll in harm's way by seeking a court order to have Juan Garcia appointed as treatment guardian for Cheryll; and (iv) he is alleged to have chosen to leave Plaintiffs in the Garcia home the existence of abuse and that that were being denied minimally adequate care. *See* FAC ¶19 at 14-15.

- <u>Jennifer Burroughs</u>. Ms. Burroughs, a former caseworker at the Adult Protective Services Division of HSD, was added as a defendant because: (i) she is alleged to have investigated the pregnancy of Catherine and closed the file on the investigation; (ii) she is alleged to have known of the rapes of Cheryll and Catherine but took no action to identify the rapist or to protect the Plaintiffs from additional abuse and neglect; (iii) she is alleged to have placed Cheryll in harm's way by seeking a court order to have Juan Garcia appointed as treatment guardian for Cheryll; (iv) she is alleged to have chosen to leave Plaintiffs in the Garcia home  the existence of abuse and that that were being denied minimally adequate care. *See* FAC ¶20 at 15-16.

- <u>Christine Montano</u>. Ms. Montano, a former caseworker at the Adult Protective Services Division of HSD, was added as a defendant because: (i) she is alleged to have investigated the pregnancy of Cheryll and closed the file on the investigation; (ii) she is alleged to have known of the rapes of Cheryll and Catherine but took no action to identify the rapist or to protect the Plaintiffs from additional abuse and neglect; (iii) she is alleged to have placed Cheryll in harm's way by seeking a court order to have Juan Garcia appointed as treatment guardian for Cheryll; (iv) she is alleged to have chosen to leave Plaintiffs in the Garcia home  the existence of abuse and that that were being denied minimally adequate care. *See* FAC ¶21 at 16.

The addition of those defendants in no way changes the essential allegations of the Plaintiffs' claims. Rather, Plaintiffs have simply refined their complaint through discovery to identify and sue those individuals they believe participated with the original defendants in the wrongs perpetrated against the Plaintiffs.

      **d.**     **The second removal petition identifies the same basis for removal -- federal question jurisdiction -- as previously raised in the first defective removal petition.**

The defendants do not identify any new basis for asserting federal question jurisdiction than they alleged in their failed removal effort in 2003. In the 2003 removal petition, the defendants stated as the basis for federal jurisdiction:

2.      Plaintiff's complaint contains federal claims pursuant 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution.

3.      The United States District Court for the District of New Mexico has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 and removal is proper pursuant to 28 U.S.C. §1441.

*See* Original Removal Petition at 2. The latest removal petition does not allege any different basis

for federal jurisdiction than was alleged before:

> 7. In their First Amended Complaint, Plaintiffs allege that Defendants, while acting under color of state law, deprived them of liberty and property interests guaranteed by the Fourteenth Amendment of the United States Constitution and various New Mexico state laws.

> 8. The United States District Court for the District of New Mexico has original jurisdiction over this civil action in that it arises under the Constitution or laws of the United States within the meaning of 28 U.S.C. §1331, and seeks to redress the deprivation, under color of any State law, of any right, privilege or immunity secured by the Constitution of the United States within the meaning of 28 U.S.C. § 1343(a)(3).

*See* Second Removal Petition at 3-4. The defendants have identified no basis for federal jurisdiction

that was either not present in the Plaintiffs' original complaint or which became first ascertainable in

the FAC.

## ARGUMENT

### I.    THE DEFENDANTS CANNOT SATISFY THEIR HEAVY BURDEN IN OPPOSING THIS MOTION TO REMAND.

Federal removal jurisdiction is statutory in nature and is to be strictly construed against

removal.

> Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)(citations omitted); *see also*

*Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 133 (10th Cir. 1982).    Indeed, "there is a

presumption against removal jurisdiction," and doubtful cases must be resolved in favor of remand. *Cardenas v. King,* CIV No. 96-1400 JP/RLP, Memo. Op. and Order at *1 (D.N.M. filed April 24, 1998) (quoting *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995)).   *See also Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974); *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17-18 (1951) (stating that "the [removal] jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties") (superceded by statute on other grounds).

The parties asserting the existence of federal jurisdiction -- the defendants -- bear the burden of proof, *see Kramer v. Sears Roebuck & Co.,* 1997 U.S. App. LEXIS 5878 *8 (10th Cir. March 20, 1997); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 518 (10th Cir. 1994), and all doubts about federal jurisdiction must be resolved in favor of retaining state court jurisdiction.   *See Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1289-90 (10th Cir. 2001); *Fajen,* 683 F.2d at 333; *Laughlin v. K-Mart Corp.,* 50 F.3d at 873; *Greenshields v. Warren Petroleum Corp.,* 248 F.2d 61, 65 (10th Cir. 1957).   The defendants cannot satisfy this heavy burden.   Their removal is untimely, and such a procedural defect requires remand.   *See Chavez v. Kincaid,* 15 F. Supp. 2d 1118, 1124 (D.N.M. 1998). *See also Huffman v. Saul Holdings Ltd. Partnership,* 194 F.3d 1072, 1077 (10th Cir. 1999) ("The failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand.").   Under these standards, remand is required.   A defendant cannot remove a second time under Section 1446(b), if the case was initially removable, and the first removal attempt was defective due to the defendants' failure to follow removal procedures.

## II.   THE DEFENDANTS WAIVED THEIR RIGHT TO REMOVE.

A defendant waives his right to seek a second removal under Section 1446(b), if the defendant either failed to remove or filed an earlier removal petition, which was defective.[2]  The courts of the Tenth Circuit have consistently applied that rule.  *See Hoover v. Allied Van Lines, Inc.*, 205 F. Supp. 2d 1232, 1234 (D. Kan. 2002) ("A defendant waiving removal on the initial petition does not regain the opportunity to remove the matter based on subsequent events.") (quoting *McHugh v. Physicians Health Plan*, 953 F. Supp. 296, 299 (E.D. Mo. 1997)); *First Nat'l Bank & Trust Co. v. Nicholas*, 768 F. Supp. 788, 791 (D. Kan. 1991) ("Grimes [a substituted defendant] is barred by ASL's [the original defendant] failure to file a notice of removal within the prescribed time limits.").  Other courts have drawn the same conclusion.

Indeed, the case of *Dunn v. Gaiam, Inc.*, 166 F.Supp.2d 1273 (C.D. Cal. 2001) is particularly instructive.  There a plaintiff brought a contract action against the licensees of martial arts videotapes.  The original defendants removed the case to federal court on grounds of preemption under copyright law, but the parties then stipulated, as here, to a remand because the removal was untimely.  *See id.* at 1276.  About four months later, plaintiffs filed an amended complaint in state court, adding a number of claims, including a RICO claim, and substituting five new Defendants for what had originally been "Doe" defendants.  The defendants again removed the case to federal court, this time on the grounds of federal question jurisdiction, citing the RICO claim.  *Id.* at 1276-77.  In ruling on plaintiff's motion to remand, the court noted that the second paragraph of § 1446(b) was inapplicable to the case:

---

[2] This is a long-standing rule.  *See St. Paul & Chicago Railway Co. v. McLean*, 108 U.S. 212, 217 (1883) (holding that "a party is not entitled, under existing laws, to file a second petition for the removal upon the same grounds, where upon the first removal by the same party, the federal court declined to proceed and remanded the suit, because of his failure to file the required copy within the time fixed by the statute.").

> The Court is not here concerned with the second paragraph of 28 U.S.C. § 1446(b), covering only complaints which, as initially filed and served, are not then removable to federal court. For such non-removable initial complaints, the 30-day period for removal (or waiver of the right to do so) commences with receipt of an amended complaint "from which it may first be ascertained that the case is one which is or has become removable . . ." 28 U.S.C. § 1446(b). In this case, as is evidenced by Defendants' initial (March 7, 2001) Notice of Removal, Defendants believed that the original Complaint filed February 2, 2001 was removable on its face. Accordingly, the 30-day period began with service of the initial Complaint. Defendants' joinder in a stipulated remand to state court was based on a concession that their removal of the initial Complaint was untimely, and waived their right to remove.

*Id.* at 1279 n. 6 (spacing in the court's opinion). In granting the motion to remand, the court held that the case was governed by the general rule that the right of removal, once waived by the defendant's failure to effect removal, is waived for all time:

> [T]he mere addition of defendants to the initial pleading, or changes in the complaint which create a new basis for removal, generally do not undo the waiver. *If a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b); subsequent events do not make it more removable or again removable. Once the right to removal is waived, it is generally waived for all time (and for all defendants), regardless of subsequent changes in the case.*

*Id.* at 1278-79 (emphasis added; citation and internal quotation marks omitted).

Similarly, in *Sehl v. Safari Motor Coaches, Inc.*, 2001 U.S. Dist. LEXIS 12638 (N.D. Cal. Aug. 10, 2001), the court also found that the defendants had waived their right to remove. The plaintiffs brought an action asserting, among other things, a claim under the Magnuson-Moss Warranty Act, in connection with their purchase of a motorcoach from the defendants. The defendant removed the action to federal court. The federal court granted the plaintiff's motion to remand the case. *Id.* at *3. The court's order granting the remand motion did not state the reasons for this decision, but it was undisputed that the motion was granted on timeliness grounds, because the court found that the removal notice was not filed within thirty days after receipt of the first

pleading in the state action. *Id.* at *3 n. 1.  Subsequently, in state court, plaintiffs amended their complaint to add a claim of libel. *Id.* at *4.  The defendant again sought to remove, on grounds that the libel claim was preempted by the Fair Credit Reporting Act. *Id.* at *8.  In granting plaintiff's second motion to remand, the court found that the defendant had waived its right to remove:

> Here . . . the original claim was removable because the Sehls alleged a federal claim, i.e., the Magnuson-Moss Warranty Act . . . Bank One [defendant] tried to remove the case based on the original complaint, but the case was remanded because removal was untimely. ***Bank One's untimely removal has the same effect as a failure to remove a removable claim under 28 U.S.C. § 1446(b).   Such a failure constitutes a waiver of Bank One's right to subsequent removal.*** . . [S]ince Bank One failed to remove the case within thirty days of the original complaint, which was removable at that time, Bank One thereby waived its right to file a subsequent removal even though the complaint was amended to create a new basis for removal.

*Id.* at *12 (emphasis added).  ***See also Cantrell v. Great Republic Ins. Co.***, 873 F.2d 1249, 1256 (9ᵗʰ Cir. 1989) ("[A]ppellees lost their opportunity to remove the case when they failed to file a petition for removal within thirty days of the filing of the original complaint."); ***Clegg v. Bristol-Myers Squibb Co.***, 285 B.R. 23, 36 (M.D. Fla. 2002) (holding that defendants who had waived their right to remove a products liability action based on diversity of citizenship by not filing timely notice of removal within 30 days after service of complaint, did not reacquire any removal rights when plaintiffs subsequently filed for Chapter 7 bankruptcy relief which thus provided an otherwise independent basis for removal); ***Kent v. Ford Motor Co.***, 200 F. Supp. 2d 664, 667 (S.D. Miss. 2002)("In the event the defendant fails to remove the case within the thirty-day period of limitations prescribed by 28 U.S.C. § 1446(b), its ability to so do may be considered waived."); ***Douglass v. Weyerhaeuser Co.***, 662 F. Supp. 147, 149 (C.D. Cal. 1987) ("[I]f this action was removable on 'arising under' grounds when it was filed, defendant waived its right to remove the action by failing to file a Petition of Removal within thirty days, and this right has not been revived.").

The original defendant's [DOH, HSD, CYFD, Roll, Lucero, and the Garcias] waiver also precludes the newest defendants from removing this case to federal court. Such a rule is consistent with the "first served" defendant rule. That rule holds that "in cases involving multiple defendants, Section 1446(b) requires that any notice of removal be filed within 30 days of service upon the first defendant, and that a failure by any defendant to file within this period precludes removal by all defendants, including any defendants added after expiration of this period." *Cellport Sys. v. Peiker Acustic GmbH & Co. KG*, 335 F. Supp. 2d 1131, 1132 (D. Colo. 2004) (adopting first served rule). The courts in this district follow the first served defendant rule. *See Meraz v. Lee*, CIV 03-424 WJ/KBM Memo. Op. and Order at 3-4 (D.N.M. filed June 17, 2003) (ordering remand and adopting first served rule); *Ellis v. Group America*, CIV 01-953 LH/LFG, Memo. Op. and Order at 2-3 (D.N.M. filed April 22, 2002) (same); *ITT Commercial Credit Corp. v. Hotel Dev. Corp.*, CIV 91-0634 M, Memo. Op. (D.N.M. filed December 22, 1994) (same). And, the first served rule is the adopted position of the other district courts in this circuit. *See Kansas Health Care Sys. v. Schlicht Mem. Lutheran Home*, 1998 U.S. Dist. LEXIS 7071 at *3-4 (D. Kan. April 14, 1998) (ordering remand and adopting the first served rule); *Wakefield v. Olcott*, 983 F. Supp. 1018, 1021 (D. Kan. 1997) (same); *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1343 n. 2 (D. Kan. 1997) ("The majority of published decisions have found that in multi-defendant actions, the thirty-day period for removal commences for all defendants when service is accomplished on the first-served defendant.") (quoting *Ford v. New United Motors, Mfg.*, 857 F. Supp. 707, 709 (N.D. Cal. 1994)). Accordingly, if the first served defendants do not timely remove the action (whether consciously or by procedural error), any subsequently served defendants cannot restart the removal clock.

Here, because the original defendants did not timely remove the action and, in fact, stipulated to remand, they cannot now consent to a second removal petition. The original

defendants waived their right to remove a second time. Such a rule is consistent with the plain language of Section 1446(b).

## III.    THE SECOND REMOVAL PETITION IS UNTIMELY BECAUSE THE ORIGINAL COMPLAINT WAS REMOVABLE.

The second paragraph of § 1446 (b) makes clear that only where a case was not initially removable, may a defendant seek to remove an action more than thirty days after a defendant receives a copy of the pleading.

> If the case stated by the initial pleading *is not removable,* a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added). By the plain language of that statute, an action, which was removable initially, cannot be subsequently removed, even if the nature of the allegations change. In other words, only those cases that were "not removable" initially may be removed subsequently. The critical question is whether the case was not removable initially. *See Knudsen v. Samuels,* 715 F. Supp. 1505, 1507 (D. Kan. 1989) ("[U]nder 28 U.S.C. § 1446(b), the question is not whether the initial pleading discloses the potential for removal but whether it discloses that the case is not removable. . . . There is nothing to indicate that the case was not removable at the time the initial pleading was received by the defendants."). Because it is undisputed that this case was initially removable, but was remanded, because of defects in the removal petition, Section 1446(b) prohibits a second removal petition in this case.

The foregoing interpretation of Section 1446(b) is well recognized by the courts in this circuit.[3] *See Hoover v. Allied Van Lines, Inc.*, 205 F. Supp. 2d at 1241 (D. Kan. 2002) ("the Carmack Amendment completely preempts the claims in plaintiffs' original petition and those claims should be treated as ones arising under federal law for purposes of the well-pleaded complaint rule. Accordingly, defendant's notice of removal, which was filed more than one year after it received plaintiffs' original petition, is untimely."); *Starko, Inc. v. New Mexico Human Serv. Dep't,* CIV 01-0268 JP/WWD, Memo. Op. and Order at *3 (D.N.M. Jun. 21, 2001) (granting plaintiffs' motion to remand, because the Section 1983 claim in the original complaint gave the state defendants unequivocal notice of a federal claim: "If the original complaint is removable, an amended complaint will begin the thirty day removal period anew only if the amended complaint alters the character of the lawsuit so as to begin an entirely new case."); *Knudsen v. Samuels*, 715 F. Supp. at 1507; *Adams v. Western Steel Bldgs., Inc.*, 296 F. Supp. 759, 761 (D. Colo. 1969) (holding the second paragraph of § 1446(b) was inapplicable because the prior complaint was removable).

Numerous other courts recognize that only cases that were not removable initially may be removed pursuant to the second paragraph of Section 1446(b). *See Cox v. Hi-Cube Express, Ltd.*, 2003 U.S. Dist. LEXIS 24226 at *8 (S.D. Ind. December 31, 2003) ("The better view is that § 1446(b) in effect assumes that the first-served defendant rule applies when the case *is removable* as

---

[3] In their second removal petition, the defendants cite *O'Bryan v. Chandler*, 496 F.2d 403 (10th Cir.1974) for the proposition that the amendment of the complaint gives them a second opportunity to remove. *See* Second Notice of Removal at 5. *O'Bryan* is inapposite for three reasons. First, the trial court in that case expressly found that the original complaint was *not* removable. *See O'Bryan*, 496 F.2d at 409 ("Judge Austin held the original complaint not removable. We cannot and do not review that decision."). Accordingly, the second removal in *O'Bryan* came within the express language of Section 1446(b) -- "the initial pleading [was] not removable." Second, *O'Bryan* did not involve the situation presented here where the defendants waived their right to remove a second time by stipulating to a remand to state court. Third, the Court explained that only where a defendant asserts a new ground for removal that did not exist before will a second removal be effective. *See id.* 496 F.2d at 409 ("there must be both an amended pleading or paper *and a ground for asserting removability that exists for the first time*") (emphasis added). The defenfendants have

originally filed, and then § 1446(b) applies to impose the outer time limit when the case *is not removable* as originally filed."); ***Kent v. Ford Motor Co.***, 200 F. Supp. 2d at 669 (holding second removal was untimely because the case was removable upon the date on which the defendant received a copy of the plaintiffs' initial pleading); ***Aderholt v. State Farm Mut. Ins. Co.***, 1996 U.S. Dist. LEXIS 21286 at *3-4 (N.D. Miss. March 13, 1996)(holding removal was untimely despite plaintiff's addition of bad faith tort claim in amended complaint, where the original complaint was removable under ERISA); ***Pearson v. Gerber Products Co.***, 788 F. Supp. 410 (W.D. Ark.1992) (granting plaintiff's motion to remand because the plaintiff's original breach of contract claim was preempted by ERISA, defendant's removal on the basis of the a new tort claim was untimely); ***Davidson v. Life Ins. Co.***, 716 F. Supp. 674, 676 (D. Mass. 1989) (holding that 1988 removal was untimely because the initial claim was preempted by ERISA such that the case should have been removed within 30 days of 1984 complaint under 28 U.S.C. § 1446(b)); ***Samura v. Kaiser Foundation Health Plan, Inc.***, 715 F. Supp. 970, 972 (N.D. Cal. 1989) ("Changes to a complaint that create a new basis for removal do not undo the original waiver. 'If a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b); subsequent events do not make it 'more removable' or 'again removable'.'") (quoting ***Hubbard v. Union Oil Company***, 601 F. Supp. 790, 795 (S.D. W. Va. 1985)); ***Clarson v. Southern Gen. Life Ins. Co.***, 694 F. Supp. 847, 848-49 (M.D. Fla.1987) (holding that an action was not timely removed where first amended complaint raised ERISA preemption but defendants did not try to remove until second amended complaint was filed). ***Kanter & Eisenberg v. Madison Assoc.***, 602 F. Supp. 798,

---

not identified any ground for asserting removability that exists for the first time in the FAC. ***O'Bryan*** does not apply in any way to this case.

801 (N.D. Ill. 1985) (remanding action and noting "The second paragraph [of §1446(b)] covers cases that are not initially removable.").

Commentators also have noted that the second paragraph of Section 1446(b) only permits removals after 30 days, if the case was not removable initially.

> Thus an amendment of the complaint will not revive the period for removal if a state court case previously was removable but the defendant failed to exercise his right to do so; the result will be the same when any other change in the case occurs or any paper is interposed revealing a ground for removal to federal court that was previously palpable or ascertainable but was not invoked by the defendant.

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d §3732 (1998) at 318.

Under the foregoing standards, the defendants have no right to seek removal in this case under Section 1446(b), because it is undisputed that the case was removable initially in 2003, and might have been removed, had the defendants followed the strict requirements for removal.

## IV.   THE "REVIVAL EXCEPTION" DOES NOT MAKE THIS CASE AGAIN REMOVABLE.

Even if the defendants could survive the waiver of their right to remove, and the inapplicability of Section 1446(b), they are not entitled to remove this case because the limited amendments to the complaint did not so change the factual and legal bases for the Plaintiffs' claims so as to revive the defendants' right to remove this case to federal court.   The rule recognizing a defendant's ability to take a second bite at removal is known as the "revival exception."   That rarely applied rule, however, has no application in this case.

The revival exception has been described as follows:

> [§ 1446(b)] makes clear that the failure to remove a case from state court within 30 days of receiving a copy of the initial pleadings setting forth a claim for relief or within 30 days after service of summons, whichever is shorter, waives removal of right. However, that right may be revived by a subsequent pleading, motion or order

that changes the nature of the litigation such that the case becomes a substantially new suit begun that day.

***Sugg v. Albuquerque Public School Dist.***, CIV 95-1184 LH/DJS, Memo. Op. and Order, (D.N.M. filed May 7, 1996). In ***Sugg***, the plaintiff brought a personal injury action against a school district and school officials alleging a civil rights claim against two of the school officials in their official capacity.   More than ten months later, plaintiff filed an amended complaint, adding a significant number of other school officials as new defendants, and adding new federal claims under Title IX of the Education Amendments of 1972 and under the federal civil rights statute.   The defendants removed the action to federal court, on grounds of federal question jurisdiction.   In granting plaintiff's motion to remand, Judge Hansen held:

> I do not conclude that Plaintiffs' filing of their First Amended Complaint for Personal Injuries changed the nature of the litigation such that the case became a substantially new suit. The additional federal claims arise out of the same transaction and set of facts described in the original complaint and were not unforeseeable. The initial complaint placed the original defendants on notice that federal claims were being asserted and these defendants chose not to remove the case to federal court.

The requirement that any amendments to a complaint must make the case essentially a "new suit" for the removal right to be revived is well recognized by the courts in this district.

In ***Carlton v. City of Albuquerque***, CIV 03-1018 MV/RLP, Memo. Op. and Order (D.N.M. filed January 30, 2004), Judge Vazquez ordered remand of a case where neither the addition of a defendant nor the addition of factual allegations revived the defendants' right to remove.   As to the addition of a defendant, Judge Vazquez observed:   "There is nothing about the addition of a defendant in the context of this action that either creates federal jurisdiction or makes the fact of federal jurisdiction newly ascertainable."   Similarly, the revision of the factual allegations did not revive the right to remove:

[T]he inclusion of additional facts in an amended complaint will support a second motion for removal only if the newly added facts create a basis for removal that did not exist when the first motion for removal was filed. Plaintiffs' initial complaint alleged, in part, that Defendants' actions had deprived, and continued to deprive, Plaintiffs of their constitutional and statutory rights. In their amended complaint, Plaintiffs included additional facts regarding Defendants' continued violation of Plaintiffs' constitutional rights since the filing of the initial complaint. The new factual allegations in Plaintiffs' amended complaint provide additional support for Plaintiffs' previously asserted claims but do not make the fact of federal jurisdiction newly ascertainable.

The amended complaint filed by Plaintiffs neither asserts a completely new cause of action nor provides a factual basis for removal that did not exist when the first motion for removal was filed. Consequently, the factual and legal grounds for Defendants removal of the amended complaint are virtually identical to the factual and legal grounds for Defendants removal of the initial complaint. As there are no new grounds for removal, Plaintiffs motion to remand must be granted.

*Id.* at 6-7. *See also Starko, Inc. v. New Mexico Human Serv. Dep't*, CIV 01-0268 JP/WWD, Memo. Op. and Order at 3 (D.N.M. filed June 21, 2001) (ordering remand: "If the original complaint is removable, an amended complaint will begin the thirty day removal period anew only if the amended complaint alters the character of the lawsuit so as to begin an entirely new case.")(citing *Wilson v. Intercollegiate (Big Ten) Conf. Athletic Ass'n.*, 668 F.2d 962, 965-66 (7th Cir.1982)); *Foote v. County of Bernalillo*, CIV 99-1434 PK/RLP, Memo. Op. and Order at 3 (D.N.M. filed January 25, 2000) (ordering remand: "the Second Amended Complaint does not differ from the earlier complaint in any material respect for the ripeness analysis, notwithstanding the apparent addition of an express equal protection claim (count III) and a claim alleging deprivation of a liberty interest in reputation (count V). These claims arise from the same set of operative facts underlying the inverse condemnation claims."). Those decisions are in line with the general view that the revival exception is a rarely applied and difficult test for a defendant to satisfy.

### A.      The "Revival Exception" Rarely Justifies A Second Removal.

The "revival exception" found its clearest articulation in the seminal case *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962 (7th Cir.1982)(Posner, J.).  In *Wilson*, a football player brought action in state court against a collegiate athletic conference and its member universities, alleging violation of his constitutional rights to equal protection and due process arising from the conference's refusal to waive its rules regarding eligibility to play football.  The suit was removable initially on federal question grounds, but the defendants did not attempt removal.  Months later, the plaintiff amended his complaint, quantifying the damages for the first time and adding several new additional counts including alleged violations of various federal civil rights statutes, a First Amendment claim, a full faith and credit clause claim and a Title IX claim.  *Id.* at 964.  The defendants then removed the case to federal court, and the plaintiff moved to remand.  The district court denied the motion to remand.  In reversing the district court's denial of plaintiff's motion to remand, the Court of Appeals for the Seventh Circuit described the two-fold purpose of the thirty day deadline in the removal statute as follows:

> [1] to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and [2] to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

*Id.* at 965.  However, the *Wilson* court recognized a judicially created "revival exception" under which the right to remove may be revived in two instances: (i) where a plaintiff deliberately misleads a defendant about the true nature of the case until the thirty day removal limit expires, or (ii) when an amended complaint is filed which "fundamentally alter[s]" the complexion of the case to such a degree that the amended complaint creates "an essentially new lawsuit."  *Id.* at 965-66.  The court

found that neither instance was present because there was no contention that plaintiff intended to mislead the defendants with his pleadings, and the amendments to those pleadings did not change the target of his attack or the nature of the relief sought. *Id.* at 966. The Seventh Circuit stated:

> The amendments did not change the target of Wilson's attack or the nature of the relief sought. . . . The basic legal theory of his action-that the Conference rules, as applied to him, were unfair and discriminatory and that he had not been given a fair hearing in his efforts to obtain a waiver of theme-was unchanged.

*Id.* Since that time, numerous courts have declined to apply the revival exception because the amendments made to the complaint did not create a "new suit." *See Baych v. Herrick Douglass, Inc.,* 227 F. Supp. 2d 620, 623 (E.D. Tex. 2002) (the addition of three new defendants and three new claims "did not alter the character of the action"); *Louisiana Farm Bureau Cas. Ins. Co. v. Michelin Tire Corp.,* 207 F. Supp. 2d 524, 526 (M.D. La. 2002)(defendant's right of removal was not revived by addition of a new plaintiff); *Potty Pals v. Carson Fin. Group,* 887 F. Supp. 208, 210 (E.D. Ark. 1995) (plaintiff's request for injunctive relief in an amended complaint did nothing to create a new basis for removal); *Pearson v. Gerber Products Co.,* 788 F. Supp. 410, 412-13 (W.D. Ark. 1992) ("The addition of a second claim preempted by ERISA to an other claim preempted by ERISA does not, in the court's view, change 'the character of the litigation so as to make it substantially a new suit.'"); *Doe v. Wyeth-Ayerst Lab. (In re Norplant Contraceptive Prods. Liability Litig.),* 878 F. Supp. 972, 976 (E.D. Tex. 1995) ("[T]he fundamental nature of the Plaintiffs' claims has remained unchanged; they have simply become more specific."); *Noble v. Bradford Marine,* 789 F. Supp. 395, 397 (S.D. Fla. 1992) (addition of a new defendant did not restart removal period when the original complaint itself was removable); *McKenna v. Brassard,* 704 F. Supp. 309, 312 (D. Mass. 1989) (removal period was not revived by amended complaint which added claim for wrongful death and increased the amount of damages sought, where the same

basic facts were); **Barnhouse v. Petrolite Corp.**, 700 F. Supp. 16, 17 (S.D.Tex.1988) (removal period was not recommenced, where original pleading sought recovery for retirement benefits allegedly due under ERISA plan, and amended pleading added claims for fraud and misrepresentation). As one court has observed: "Courts that have considered the 'revival exception' have overwhelmingly found the facts of their cases did not warrant its application." *See Clegg v. Bristol-Myers Squibb Co.*, 285 B.R. at *31 (collecting 8 cases in support). The "revival exception" has no application here.

### B. The Limited Amendments Made To The Plaintiffs' Complaint Did Not Create A "New Suit."

Neither the naming of some of the "John Doe" defendants nor the clarification of factual allegations in the FAC has created a "new suit," so that federal question jurisdiction was first ascertainable to the defendants. As detailed above, Plaintiffs have simply refined their complaint and have identified as additional defendants the persons accused of committing the wrongdoing originally alleged in first complaint. The character of the lawsuit has not so changed that the Plaintiffs have begun "an entirely new case." The same set of operative facts present in the original complaint is present in the FAC. This is not a case where the rare "revival exception" should be applied.

### V. THE COURT SHOULD REQUIRE THE DEFENDANTS TO PAY THE PLAINTIFFS' REASONABLE COSTS AND EXPENSES, INCLUDING ATTORNEYS' FEES, INCURRED AS A RESULT OF THE REMOVAL.

Plaintiffs should be awarded their fees and costs for having to remand this improperly removed case to state court. The second removal is procedurally defective and does not meet any of the standards for removal under the second paragraph of Section 1446(b). The impropriety of the removal is not a close question.

As the Honorable Martha Vazquez noted in **McNabb v. New York Life**, CIV 99-1410 MV/ DJS, Memo. Op. and Order at *11 n.3 (D.N.M. filed May 18, 2000):

> [B]ad faith is not required for a court to exercise its discretion in favor of attorney fees in a remand order. *See Daleske v. Fairfield Communities*, 17 F.3d 321, 3234 (10th Cir. 1994), cert. denied, 511 U.S. 1082 (1994). Rather, the key issue is the propriety of defendant's removal. **Excell. Inc. v. Sterling Boiler & Mech.**, 106 F.3d 318, 320-21 (10th Cir. 1997).

*Id. See also Kellingsworth v. Phillips*, CIV 04-0068 JB/DJS, Memo. Op. and Order at 5 (D.N.M. filed May 3, 2004)(granting remand motion and fees and noting: "While the movant does not need to show, and the Court need not find, that the removing party's attempt at removal was in bad faith, Kellingsworth's attempted removal did not have a legal basis and did not comply applicable procedural law."); *Ferrell v. Allstate Ins. Co.*, CIV 02-1436 LH/ACT, Memo. Op. and Order at *9 (D.N.M. filed June 5, 2003)(granting fees: "This Court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under this statute. *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 324 (10th Cir. 1994).").

Here, just as Judge Vazquez held in **McNabb**, "removal [was] improper *ab initio* . . . ." **See also Moongate Water Co., Inc. v. Dona Ana Mutual Domestic Water Consumers Ass'n**, CIV 03-0771 RB/LCS Memo. Op. and Order at 7 (D.N.M. filed February 11, 2004)(denying fees because the defendant had a "arguable basis for removal," but noting "The inquiry is whether the removal was proper *ab initio*."). The defendants knew or should have known that their latest petition is improper for the reasons outlined above. The Court should award the Plaintiffs their fees and costs incurred in responding to the improper removal.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant their motion to remand, order this matter remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico, and, pursuant to 28 U.S.C. § 1447, order the defendants to pay Plaintiffs' reasonable costs and expenses, including attorneys' fees, incurred as a result of the removal.

Respectfully Submitted,

PEIFER, HANSON & MULLINS, P.A.

By: _____

Charles R. Peifer
Robert E. Hanson
Post Office Box 25245
Albuquerque, NM 87125-0245
(505) 247-4800

Peter Cubra
122 Tulane SE
Albuquerque, NM 87106
(505) 256-7690

*Attorneys for Plaintiffs Elisa C., Cheryll M. and Catherine P., by La Familia, Inc., their guardian*

We hereby certify that a copy of
the foregoing pleading was served
by first-class mail to all counsel of record:

on this 18th day of March 2005.

PEIFER, HANSON & MULLINS, P.A.

By: _____

Robert E. Hanson

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

03 DEC 29 PH 1: 09

CLERK LAS CRUCES

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

Elisa C., et al. persons with developmental
disabilities, by LA FAMILIA, INC., their
guardian,

        Plaintiffs,

vs.

NEW MEXICO DEPARTMENT OF HEALTH,
et al.,

        Defendants.

No. CIV-03-1219 RB/LCS

## STIPULATED ORDER OF REMAND

       COME NOW the Plaintiffs, by and through counsel, Robert E. Hanson, Esq., Peifer,

Hanson & Mullins, P.A.; and Peter Cubra, Esq.; and Defendants New Mexico Department of

Health, New Mexico Department of Human Services, and New Mexico Children Youth and

Families Department, by and through counsel, Jerry A. Walz, Walz and Associates, and hereby

stipulate that the Defendants did not have unanimity of all defendants when the removal petition

was filed nor was "all process" attached to the removal petition pursuant to 28 USC § 1446. The

parties stipulate that the lawsuit should be remanded forthwith to state district court. Further, the

parties stipulate, that Plaintiffs will not seek attorney fees or costs against Defendants resulting

from Plaintiffs' motion for remand.

       The Court having reviewed this stipulated order finds that it is well taken.



**EXHIBIT**

"A"

It is therefore ORDERED, ADJUDGED AND DECREED that the above lawsuit is hereby remanded forthwith to the First Judicial District State Court. Further, the parties shall bear their own fees and costs relating to this remand proceeding.

THE HONORABLE ROBERT BRACK
United States District Court Judge

Approvals:

Robert E. Hanson, Esq
PEIFER, HANSON & MULLINS P.A.
Attorneys for Plaintiffs
P. O. Box 25245
Albuquerque, NM 87125

Mr. Jerry A. Walz, Esq.
WALZ AND ASSOCIATES
Attorneys for State Defendants
12009 Highway 14 N.
Cedar Crest, New Mexico 87008-9405

2